IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division



Mar. 31, 2026

CLERK, U.S. DISTRICT COURT
RICHMOND, VA

WILLIAM PARKE CUSTIS,
    Plaintiff,

v.

                                               Civil No. 3:23cv799 (DJN)

ELLEN MARIE HESS, *et al.*,
    Defendants.

**MEMORANDUM OPINION**

William Parke Custis, a Virginia inmate proceeding *pro se*, filed this 42 U.S.C. § 1983 action. The Court dismissed the action. (ECF No. 30.) Plaintiff appealed. (ECF No. 32.) This matter was remanded to this Court to determine whether Plaintiff has shown good cause or excusable neglect warranting an extension of the appeal period under Federal Rule of Appellate Procedure 4(a)(5). (ECF No. 35.) The undersigned referred the matter to the Honorable Mark R. Colombell, United States Magistrate Judge, to determine whether Plaintiff has shown good cause or excusable neglect that would warrant an extension of time under Federal Rule of Appellate Procedure 4(a)(5). (ECF No. 36.) The Magistrate Judge issued a Report and Recommendation recommending that the Court find that Plaintiff has shown good cause warranting an extension of the appeal period under Rule 4(a)(5). (ECF No. 44.) Plaintiff responded to that Report and Recommendation and requested further relief. (ECF No. 45.) For the reasons set forth below, the Report and Recommendation will be ACCEPTED and ADOPTED.

## I.    THE REPORT AND RECOMMENDATION

The Magistrate Judge made the following findings and recommendations:

> Plaintiff is an inmate currently housed at Haynesville Correctional Center ("Haynesville"). He initiated this action pursuant to 42 U.S.C. § 1983 and is proceeding *pro se*. (ECF No. 1.) Plaintiff filed his original Complaint on November

22, 2023, and alleged that Defendants violated his Fifth and Fourteenth Amendment Due Process rights when the Virginia Employment Commission (the "VEC") terminated Plaintiff's pandemic unemployment assistance benefits. (*Id.* at 4.) By Memorandum Order dated March 12, 2024, the Court directed Plaintiff to particularize his Complaint, which he did on April 8, 2024. (ECF Nos. 13 and 15.)

Thereafter, pursuant to the Court's screening obligations under the Prison Litigation Reform Act, the Court informed Plaintiff that this "action appears to be barred by the relevant two-year statute of limitations" and that "Plaintiff does not indicate that he has exhausted his state administrative remedies regarding his unemployment claim." (ECF No. 24 at 2-3.) The Court directed Plaintiff "to submit proof that he mailed his original complaint in this matter to the Court in May of 2023" and "to explain, in detail, what steps he has taken to exhaust his administrative remedies with the VEC." (*Id.* at 4.) Furthermore, the Court directed Plaintiff to "explain why the action should not be dismissed for lack of jurisdiction" based on Virginia Code § 60.2-625(A). (*Id.* at 5.)[1]

On November 1, 2024, Plaintiff responded to the October 7, 2024 Memorandum Order. (ECF No. 26.) By Memorandum Opinion and Final Order dated December 17, 2024, the Court declined to dismiss the action as barred by the statute of limitations and instead dismissed the action without prejudice for lack of jurisdiction and as legally frivolous. (ECF No. 28 at 7-8; ECF No. 29.) After the entry of the Court's Final Order on December 17, 2024 (ECF No. 29) Plaintiff was afforded thirty (30) days to note an appeal, pursuant to Federal Rule of Appellate Procedure 4(a)(1)(A).

The appeal period expired on January 16, 2025, without Plaintiff noting an appeal. However, on February 18, 2025, the Court received a letter from Plaintiff requesting a status update on his motion for reconsideration and notice of appeal. (ECF No. 31.)[2] The Court took no action in response to Plaintiff's February 18, 2025 letter. On April 4, 2025, Plaintiff sent the Court of Appeals for the Fourth Circuit a letter that the Court of Appeals construed as Plaintiff's Notice of Appeal. (ECF No. 32.) As a result, on December 31, 2025, the Court of Appeals issued a per curiam opinion remanding this matter to the District Court to decide whether Plaintiff has shown good cause or excusable neglect warranting an extension of the appeal period under Federal Rule of Appellate Procedure 4(a)(5). (ECF No. 35 at 2-3.)

On January 2, 2026, the District Court referred the matter to the undersigned to issue a report and recommendation within sixty days addressing the proposed findings of fact and conclusions of law. (ECF No. 36.) By Memorandum Order

---

[1] The Court cited *Collins v. Hess*, No. 1:21cv750, 2021 WL 3163615, at *2 (E.D. Va. June 23, 2021) that states "[o]nly after the VEC's internal appellate process has been exhausted is judicial review appropriate, at which point a plaintiff may file 'an action in the circuit court of the county or city in which the individual who file the claim was last employed' – not in federal court."

[2] ECF No. 31 was stamped "RECEIVED" by the "HCC Mailroom" on February 4, 2025, within the 30-day extension window described in Federal Rule of Appellate Procedure 4(a)(5).

entered January 6, 2026, the undersigned ordered Plaintiff to file a response indicating the facts and circumstances showing good cause or excusable neglect as to why his Notice of Appeal was not filed within the required thirty-day period. (ECF No. 37.) The Court received a letter from Plaintiff on January 20, 2026, requesting a thirty-day extension to respond to ECF No. 37. (ECF No. 38.) The Court granted Plaintiff's request to the extent that Plaintiff was required to respond not later than February 2, 2026. (ECF No. 39.)

On January 29, 2026, the Court received Plaintiff's Response, sworn to under penalty of perjury. (ECF No. 40.) However, Plaintiff indicated that he did not have the necessary funds in his inmate account to copy documents and therefore could not mail several exhibits that he referenced in his Response. (*Id.*) By Memorandum Order entered February 2, 2026, the undersigned ordered Plaintiff's correctional facility to provide him with additional funds, allowing Plaintiff to send the necessary exhibits to the Court. (ECF No. 41.) On February 2, 2026, Plaintiff filed a Motion for Leave to Respond to Any Filing or Ruling Within 60 Days. (ECF No. 41.) On February 18, 2026 the Court received Plaintiff's Exhibits A – H that were meant to accompany Plaintiff's Response. (ECF No. 43.)

## II.    FINDINGS OF FACT

1. Plaintiff received a $100 deposit to his inmate account on December 16, 2024. (ECF No. 43-1 at 4.)
2. Haynesville officials changed Plaintiff's status from indigent to non-indigent for a period of thirty (30) days after Plaintiff received the deposit. (ECF No. 43-1 at 4.)
3. Plaintiff did not receive access to the $100 deposit. (ECF No. 43-1 at 5.)
4. Plaintiff experienced difficulty sending and receiving legal mail due to institutional changes to his status as an indigent inmate. (ECF No. 43-1 at 10, 12).
5. Being classified as an "indigent" inmate, per Haynesville policy, allows an inmate to receive forty (40) first-class postage stamps for legal correspondence. (ECF No. 40-3.)
6. During the period between December 16, 2024 and January 15, 2025, Plaintiff was unable to send legal mail because he did not receive access to the $100 deposit, nor was Plaintiff afforded first-class postage stamps. (ECF No. 43-1 at 5, 14.)
7. Plaintiff declared that he deposited his Notice of Appeal on January 1, 2025 and that first-class postage was prepaid by the institution. (ECF No. 40-1 at 2.)
8. The Court did not receive this Notice of Appeal.
9. Plaintiff disputed the changes to his indigent status and informed Haynesville officials about his apparent inability to send and receive legal mail in several Written Complaints and Grievance forms. (ECF No. 43-1 at 2-25.)
10. Plaintiff did not know which of his legal correspondence, if any, was being sent from Haynesville during this period. (ECF No. 43-1 at 14.) Some, if not

3

all, of Plaintiff's out-going legal mail was being held within the facility, including documents related to this matter. (*Id.*)

11.    Per Haynesville policy, Haynesville could not return unsent and/or held mail to Plaintiff. (ECF No. 43-1 at 17.)

12.    Plaintiff's challenges sending and receiving legal mail lasted from December 16, 2024, until at least March 26, 2025. (ECF No. 43-1 at 2-25.)

## III.    LEGAL STANDARD

Federal Rule of Appellate Procedure 4(a)(1) requires that, to be timely filed, "the notice of appeal . . . must be filed with the district clerk within 30 days after entry of the judgment or order appealed from." For a *pro se* inmate confined in a correctional facility, a notice of appeal is timely "if it is deposited in the institution's internal mail system on or before the last day for filing" and is accompanied by a declaration, notarized statement, or evidence showing the notice was timely deposited in the institution's internal mail system. Fed. R. App. P. 4(c)(1); *see also Houston v. Lack*, 487 U.S. 266, 270 (1988).

However, the district court may extend the time to file a notice of appeal if 1) "a party so moves no later than 30 days after the time prescribed by this Rule 4(a) expires;" and 2) if "that party shows excusable neglect or good cause." Fed. Rule App. Proc. 4(a)(5)(A)[3]; *see also Myers v. Stephenson*, 781 F.2d 1036, 1038

---

[3]    The Advisory Committee Notes to the 2002 Amendments clarify the difference between "excusable neglect" and "good cause":

> Rule 4(a)(5)(A)(ii) has been amended to correct this misunderstanding and to bring the rule in harmony in this respect with Rule 4(b)(4). A motion for an extension filed prior to the expiration of the original deadline may be granted if the movant shows either excusable neglect or good cause. Likewise, a motion for an extension filed during the 30 days following the expiration of the original deadline may be granted if the movant shows either excusable neglect or good cause.

> The good cause and excusable neglect standards have "different domains." *Lorenzen v. Employees Retirement Plan*, 896 F.2d 228, 232 (7th Cir. 1990). They are not interchangeable, and one is not inclusive of the other. The excusable neglect standard applies in situations in which there is fault; in such situations, the need for an extension is usually occasioned by something within the control of the movant. The good cause standard applies in situations in which there is no fault--excusable or otherwise. In such situations, the need for an extension is usually occasioned by something that is not within the control of the movant.

> Thus, the good cause standard can apply to motions brought during the 30 days following the expiration of the original deadline. If, for

4

(4th Cir. 1986) (explaining that "a motion to extend the time must be filed no later than thirty days after the expiration of the original appeal period in order for the court of appeals to have jurisdiction over the appeal . . . .") (citation omitted). "When deciding a Rule 4(a)(5) motion the district court must consider 'the danger of prejudice to the [non-movant], the length of the delay and its potential impact upon judicial proceedings, the reason for the delay, including whether it was in the reasonable control of the movant, and whether the movant acted in good faith.'" *United States v. Carson*, 52 F.3d 1173, 1180 (2d Cir. 1995) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 396 (1993)).

## IV.    CONCLUSIONS OF LAW

Here, the undersigned finds that the "good cause" standard applies because Plaintiff has shown that he has experienced ongoing difficulty in sending and receiving mail in circumstances beyond his control. *See, e.g.*, *Roman v. Sam's Club/Walmart*, No. 7:10-CV-524, 2013 WL 1643936, at *1 (W.D. Va. Apr. 16, 2013) (quoting Fed. R. App. P. 4(a)(5)(A)(ii), Advisory Committee Notes to the 2002 Amendments); *supra* note 3.

### A.    Challenges with Sending and Receiving Legal Mail.

The undersigned finds that Plaintiff has provided sufficient facts and explanation detailing how he experienced ongoing challenges in sending and receiving legal mail with regard to this matter. For example, after the District Court entered its Final Order dismissing the case with prejudice on December 17, 2024 (ECF No. 30), the next correspondence the Court received from Plaintiff on February 18, 2025, indicated that Plaintiff previously attempted to send the Court both a Motion for Reconsideration and a Notice of Appeal, neither of which the Court received. (ECF No. 31.) Plaintiff declared that he deposited his Notice of Appeal on January 1, 2025 and that first-class postage was prepaid by the institution. (ECF No. 40-1 at 2.)

During the relevant period between the District Court's Final Order (December 17, 2024), the thirty-day period for Plaintiff to file a Notice of Appeal (January 16, 2025), and the subsequent thirty-day period to request an extension

---

example, the Postal Service fails to deliver a notice of appeal, a movant might have good cause to seek a post-expiration extension. It may be unfair to make such a movant prove that its "neglect" was excusable, given that the movant may not have been neglectful at all. Similarly, the excusable neglect standard can apply to motions brought prior to the expiration of the original deadline. For example, a movant may bring a pre-expiration motion for an extension of time when an error committed by the movant makes it unlikely that the movant will be able to meet the original deadline.

Fed. R. App. P. 4(a)(5)(A)(ii), Advisory Committee Notes to the 2002 Amendments.

(February 15, 2025), it appears that Plaintiff experienced difficulty sending and receiving legal mail due to institutional changes to his status as an indigent inmate. Being classified as an "indigent" inmate is relevant because Haynesville policy allocates forty (40) first-class postage stamps to indigent inmates for legal correspondence. (ECF No. 40-3.)

In his Response to this Court's Order (ECF No. 37), Plaintiff provided the Court with exhibits, including several Written Complaints in which Plaintiff asked Haynesville officials why his legal mail was not being processed properly. (*See* ECF No. 43-1 at 2, 10.) These processing concerns appear to stem from a $100 deposit he received from a family member for Christmas on December 16, 2025, resulting in changes to his indigent status. (ECF Nos. 43-1 at 4, 5.) Haynesville officials approved Plaintiff's Request for Indigent Services[4] on January 9, 2025, but annotated that his status as indigent would not apply until January 15, 2025, thirty days after receipt of the deposit. (ECF No. 43-1 at 4.) Thereafter, Haynesville officials rescinded Plaintiff's status as indigent because Plaintiff "declared that he is not indigent." (ECF No. 43-1 at 6.)

The back and forth between Plaintiff and Haynesville officials concerning Plaintiff's legal mail continued during the relevant period. Plaintiff asserts that his legal mail was being improperly held and that he "has never maxed out his monthly legal postage and is at a loss for why his outbound mail is being held." (ECF No. 43-1 at 12.) Later, in an emergency grievance submitted on February 13, 2025, Plaintiff described how he had "several court deadlines to comply with" and that Plaintiff "need[ed] to confirm what has and has not been sent out." (ECF No. 43-1 at 19.)

The above facts and circumstances, supported by Plaintiff's exhibits, indicate that, during the relevant period in which Plaintiff was required to file a Notice of Appeal or a Request for Extension, Plaintiff experienced difficulty sending and receiving legal mail due to institutional processing issues, and that despite having knowledge of the deadlines in his cases, Plaintiff was unable to confirm if his mail had been sent and when.

### B.     Good Cause.

"With regard to determining whether a party's neglect of a deadline is excusable, the Supreme Court has held that 'the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission.'" *Gibbons v. United States*, 317 F.3d 852, 854 (8th Cir. 2003) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)). Other courts have noted that "[t]here is little guidance on what constitutes good cause." *See, e.g., J.D. ex rel. Davis v. Kanawha County Bd. of Educ.*, 517 F. Supp. 2d 822, 824 (S.D. W. Va. 2007) (noting that "the good cause standard applies when the delay is the result of something not within the control of the movant").

Here, the delay appears to be a result of circumstances beyond Plaintiff's control. The facts presented indicate that Haynesville officials processed Plaintiff's legal mail, but that his fluctuating status as an "indigent" inmate could have impacted whether the mail was processed on time. The Court does not find that this

---

[4]     Per Haynesville policy, indigent inmates receive forty (40) first-class postage stamps for legal correspondence. (ECF No. 40-3.)

is a situation in which Plaintiff was unaware of the deadline or failed to comply with the deadline. *Cf. Id.* (explaining how "[t]he reason for the delay is both that the plaintiff did not know that he was required to file an appeal within 30 days . . . and that he misplaced the letter from the Clerk which provided him a copy of the applicable rules"). On the contrary, Plaintiff expressed awareness of pending deadlines and noted the urgency of resolving his mail processing concerns so that he would not be late in filing legal documents. (*See* ECF No. 43-1 at 12.) Thus, the undersigned finds that Plaintiff has presented credible evidence that he attempted to comply with the deadline in this matter by filing a Motion for Reconsideration and a Notice of Appeal. (*See* ECF No. 31; ECF No. 40-1 at 2.)

Further, the factors set forth in *Pioneer* require the Court to consider: (1) "the danger of prejudice [to the opposing party]; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith." *United States v. Farris*, 834 F. App'x 811, 812 (4th Cir. 2021) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 394 (1993)).

Regarding the first factor, the undersigned finds that there is not a danger of prejudice to the opposing party. In typical cases, the first factor generally weighs in favor of the movant,[5] and here, the undersigned finds it weighs even more heavily in favor of Plaintiff since Defendants have not entered an appearance in this matter and have not otherwise participated in the proceedings. Regarding the second factor, the length of delay is relatively short: Plaintiff mailed his Motion for Extension (ECF No. 31) on February 4, 2025, within the sixty-day period required by Federal Rule of Appellate Procedure 4(a)(5), resulting in minimal delay. *See supra* note 5. Regarding the third and fourth factors, the undersigned finds that Plaintiff acted in good faith and the reason for delay was not within the reasonable control of Plaintiff, as discussed previously. As the third factor is the most significant,[6] and for the reasons discussed above, the undersigned finds that the *Pioneer* factors weigh in favor of granting Plaintiff's Motion for an Extension of time.

Because the "determination is at bottom an equitable one," and based on the factors discussed above, the undersigned finds that Plaintiff has demonstrated good cause warranting an extension of the appeal period.

---

[5]    *See Batton v. Commc'ns Workers of Am., AFL-CIO*, No. 2:13CV426, 2014 WL 5742409, at *9 (E.D. Va. Aug. 4, 2014), *aff'd sub nom., Batton v. Commc'n Workers of Am.*, AFL-CIO, 618 F. App'x 175 (4th Cir. 2015) (citing *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 366 (2d Cir. 2003) ("In the typical case, the first two *Pioneer* factors will favor the moving party: [D]elay always will be minimal in actual if not relative terms, and the prejudice to the non-movant will often be negligible, since the Rule requires a 4(a)(5) motion to be filed within thirty days of the last day for filing a timely notice of appeal.") (quotation omitted).

[6]    *See Farris*, 834 F. App'x at 812 ("Moreover, the *Pioneer* factors do not carry equal weight; 'the excuse given for the late filing must have the greatest import.'") (quoting *United States v. Munoz*, 605 F.3d 359, 372 (6th Cir. 2010)).

7

### V.    *CONCLUSION*

The undersigned finds that Plaintiff has shown good cause as to why his Notice of Appeal was not filed within the required thirty-day period under Fed. R. App. P. 4(c)(1). Therefore, the undersigned RECOMMENDS that: (1) the District Court FIND that Plaintiff has shown good cause warranting an extension of the appeal period under Rule 4(a)(5); and (2) the supplemented record be returned to the United States Court of Appeals for the Fourth Circuit.

Additionally, the undersigned RECOMMENDS that the District Court DENY WITHOUT PREJUDICE Plaintiff's Motion for Leave to Respond to Any Filing or Ruling Within 60 Days (ECF No. 42).

(ECF No. 44 at 1–11 (alterations in original).)

## II.    STANDARD OF REVIEW

"The magistrate [judge] makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with this court." *Estrada v. Witkowski*, 816 F. Supp. 408, 410 (D.S.C. 1993) (citing *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976)). This Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). "The filing of objections to a magistrate's report enables the district judge to focus attention on those issues — factual and legal — that are at the heart of the parties' dispute." *Thomas v. Arn*, 474 U.S. 140, 147 (1985). "[W]hen a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations," *de novo* review is unnecessary. *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982) (citations omitted).

## III.    PLAINTIFF'S RESPONSE TO REPORT AND RECOMMENDATION

Plaintiff does not object to the Magistrate Judge's conclusion that he has shown good cause warranting an extension of time. (ECF No. 45 at 1.)

8

Plaintiff, however, "objects to the Magistrate Judge's recommendation that the District Court deny without prejudice Plaintiff's Motion for Leave to Respond to Any Filing or Ruling within 60 Days." (*Id.* (capitalization corrected).) Plaintiff was able to comply with the briefing schedule and submit the necessary documents. Accordingly, his objection to the Magistrate Judge's recommendation to deny the Motion for Leave to Respond to Any Filing or Ruling within 60 Days will be OVERRULED.

Additionally, Plaintiff requested that the Court order the Virginia Department of Corrections to provide him with "working blue and black pens." (*Id.* (capitalization corrected).) Plaintiff cites no legal authority that would warrant such an order. Accordingly, this request for pens will be DENIED.

## IV.    CONCLUSION

Plaintiff's objection will be OVERRULED. The Report and Recommendation will be ACCEPTED and ADOPTED. The Court finds that Plaintiff has satisfied Fed. R. App. P. 4(a)(5) by showing good cause that warrants an extension of the appeal period. Plaintiff's Motion for Leave to Respond to Any Filing or Ruling within 60 Days (ECF No. 42) will be DENIED WITHOUT PREJUDICE. Plaintiff's request for pens (ECF No. 45) will be DENIED.

An appropriate Order will accompany this Memorandum Opinion.

Let the Clerk file a copy of the Memorandum Opinion electronically and send a copy to Plaintiff.

_____ /s/ _____
David J. Novak
United States District Judge

Richmond, Virginia
Dated: March 31, 2026

9